## Case No. 16,664.

### UNITED STATES v. WELLS.

[3 Wash. C. C. 245.] [1]

Circuit Court, D. Pennsylvania. April Term, 1814.

STAY OF EXECUTION—RULE TO SHOW CAUSE.

1. Motion for a rule to show cause why execution shall not be stayed—the defendant claiming that he is entitled to further credits from the United States, which will reduce the amount of the judgment confessed in their favour.

2. The court will not even grant a rule to show cause why the motion shall not be granted, unless upon affidavit, stating precisely what credits are claimed, and the nature of them.

Judgment having been confessed in this case at a former term, the district attorney agreeing to stay execution, in order to give the defendant an opportunity to obtain such credits as the comptroller and auditor of the treasury (to whom the subject was by this agreement referred) might think the defendant entitled. Those officers did not act in the business; and the defendant now moved for a rule to show cause why execution should not be stayed, and the defendant permitted by some means to show credits against the judgment.

## Case No. 16,665.

### UNITED STATES v. WELLS.

[15 Int. Rev. Rec. 56; 11 Am. Law Reg. (N. S.) 424; 4 Chi. Leg. News, 113; 7 Am. Law Rev. 366.]

District Court, D. Minnesota. Jan., 1872.

OFFENCES UNDER STATE AND UNITED STATES LAWS — CONCURRENT JURISDICTION OF STATE AND FEDERAL COURTS—AUTHORITY OF MARSHAL.

1. The same offence may be made punishable both under the laws of a state and of the United States, and over such offences the state and federal courts have concurrent jurisdiction.

2. In cases of concurrent jurisdiction the court that first gets control of the subject matter will continue to exercise jurisdiction until judgment, without molestation or interference from the other; this is the proper course to pursue in criminal as well as in civil cases.

3. The marshal exceeded his authority in taking the prisoner from the custody of the sheriff; he should have made return of the fact that the sheriff held the prisoner in custody for a violation of state laws.

4. The court, after citing various conflicting authorities, holds the indictment good, but believing the state exercised jurisdiction in good

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

faith, turns the prisoner over to be dealt with by the state authorities.

The prisoner [C. P. Wells] was indicted at this term of the court for passing counterfeit treasury notes. A plea in abatement was interposed, alleging that an indictment had been found against him at a regular term of the district court of the state of Minnesota, held in and for the county of Fillmore, on the 16th day of May, 1871, charging him with the very same crime of felony, as contrary to the statute and against the peace and dignity of the state of Minnesota; that subsequently, on the 15th of November, 1871, the prisoner was arrested by the sheriff on a bench warrant issued by the state court, was arraigned, pleaded not guilty, and the cause was continued until the next regular term of the court, and the prisoner committed to the cus. dy of the sheriff in default of bail; that while the prisoner was held as aforesaid, he was taken out of the custody of the sheriff by the marshal of the United States, and is now held by him without authority of law. A demurrer is filed by the United States district attorney.

C. K. Davis, U. S. Dist. Atty.
Thomas Wilson, contra.

NELSON, District Judge. The question presented by the plea in abatement is an interesting one, and although I am not able to give it at this time the careful consideration which its importance demands, I think I am safe in announcing the conclusions arrived at upon the examination of such authorities as have been within my reach, at least, so far as to lay down a rule of comity which must exist between the federal and the state courts in cases of this character, whether they arise in the exercise of criminal or civil jurisdiction. The point involved, though interesting, is not entirely a new one. It has engaged the attention of both the state and federal courts, and the result in nearly every instance has been to recognize the right of both courts to punish, in the proper exercise of their authority, "when the same act [U. S. v. Marigold, 9 How. (50 U. S.) 570] might, as to its character and tendencies, and the consequences it involved, constitute an offence against both the state and federal governments." The court in this case, regarded this doctrine as distinctly enunciated in the case of Fox v. Ohio, 5 How. [46 U. S.] 410. and adopted it as sound. In the latter case, the point raised was whether the statute of the state of Ohio, which provided for the punishment of passing counterfeit coin, was consistent with, or in contravention of the constitution of the United States, or any law enacted in pursuance of the constitution. After a full and exhaustive argument, the supreme court of the United States decided, Mr. Justice McLean alone dissenting, that the state possessed the power; but Mr. Justice Daniel, who delivered the opinion, said: "It is almost certain that in the benignant spirit in which the institutions both of the state and federal systems are administered, an offender who should have suffered the penalties denounced by the one, would not be subject, a second time, to punishment by the other, for acts essentially the same, unless, public safety demanded it."

A very great variety of opinions existed previous to these decisions, as is shown by the authorities cited by the learned counsel for the defence. My attention has been called to the case of Houston v. Moore, 5 Wheat. [18 U. S.] 1, in which Judge Washington says, "That if the jurisdiction be concurrent, the sentence of either court, either of conviction or acquittal, may be pleaded in bar of the prosecution before the other." The defendant's counsel insists that by a parity of reasoning the plea in abatement must be held good in the case at bar, and the indictment dismissed, as it is undeniable that the state court first obtained jurisdiction of the person of the offender. I feel the force of the reasons argued, but cannot assent to the opinion above expressed. Justice Johnson, who delivered a separate opinion in the case, appears to have announced the doctrine which has subsequently governed the court in cases involving similar questions of jurisdiction. He says, "Why may not the same offence be made punishable both under the laws of the state and of the United States? Every citizen owes a double allegiance; he enjoys the protection and participates in the government of both the state and the United States. * * * When the United States has not assumed this exclusive exercise of power, I cannot imagine a reason why the states may not also, if they feel themselves injured by the same offence, assert their right of inflicting punishment also." This opinion also dissents from the view maintained, that there might be embarrassment in the general administration of justice, and, I think, fairly indicates that rule of comity which should control the courts. Some able legal minds at that time, among the number Chancellor Kent, took the same view of the case as did the court in 5th Wheaton; others, Justices Story and McLean, have considered state laws similar to this one as repugnant to the constitution of the United States, and that they must necessarily yield; if not, then delinquents or offenders are liable to be twice put in jeopardy and be twice subjected to punishment, "against the manifest intent of the act of congress, the principles of the common law, and the genius of our free government." They also deny that after the federal congress have provided for the trial and punishment of an offence manifestly within their constitutional authority, a state law, creating and defining a like offence, could confer jurisdiction upon a state court to try it, without the consent of congress. Others, not exactly concurring in the reasons announced above, have doubted the authority of the state governments to enact any law which might make one act an offence against both governments. A very ingenious view is cited by Ioynes, Judge, in

the case of Jett v. Com., 18 Gratt. 946. Speaking of the decisions upon the question that a person could not by one act commit an offence against both the state and federal governments, he says: "An able writer advocated this view of the question, upon the ground that an offence against one state ought to be considered as merged in an offence against all the states." Some state courts adopted, at first, the dissenting opinion of Justice McLean in Fox v. Ohio, holding to the repugnancy of the state law to the federal constitution, and that there would be double punishment for one offence. I have not time to allude to the views taken by the courts in all of the cases cited by counsel, but they show conflict of opinion upon the subject. The principle involved again came before the supreme court of the United States in the case of Moore v. Illinois, 14 How. [55 U. S.] 13. In this case the plaintiff had been convicted under a statute of Illinois for "harboring and secreting a slave." It was strenuously urged that this law was in conflict with the constitution of the United States and the acts of congress on the subject of fugitives from labor. I will extract a portion of the opinion of the court by Mr. Justice Greer, which sets at rest the point raised by the counsel in regard to the effect of a plea in bar: "It has been urged that this act is void, as it subjects the delinquent to a double punishment for a single offence. * * * An offence, in its legal signification, means the transgression of a law. A man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace, in consequence of the same act; and may be said, in common parlance, to be twice punished for the same offence. Every citizen of the United States is also a citizen of a state or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. Thus, an assault upon the marshal of the United States, and hindering him in the execution of legal process, is a high offence against the United States, for which the perpetrator is liable to punishment; and the same act may be also a gross breach of the peace of the state, a riot, assault, or murder, and subject the same person to punishment under the state laws for a misdemeanor or felony. That either or both may (if they see fit) punish such an offender, can not be doubted. Yet it can not be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the oth-er; consequently this court has decided in the case of Fox v. The State of Ohio, that a state court may punish the offence of uttering and passing false coin as a cheat or fraud practiced on its citizens, and in the case of the U. S. v. Marigold, that congress in the proper exercise of its authority, may punish the same act as an offense against the United States." That distinguished jurist, the late Chief Justice Taney, subsequently gave his sanction to the decision in this case, but he accompanied it with these remarks: "In all civilized communities it is recognized as a fundamental principle of justice that a man ought not to be punished twice for the same offence." In the case before him he intimated that, if the state court had inflicted punishment, he would have suspended sentence, to permit executive interference by pardon. See opinion of Reves, J., 16 Grat. 942.

These views, so manifestly humane, commend themselves to my sense of justice; but the concurrent jurisdiction must be regarded as settled. The state and federal courts both having jurisdiction, the question then naturally arises, How can a conflict be avoided? In the case before me, there was no process issued by this court that could reach the person of the prisoner. U. S. v. Van Fossen [Case No. 16,607], and note. The marshal exceeded his authority in taking him from the custody of the sheriff. He should have made a return of the fact, that the officer held the prisoner in custody for a violation of state laws. Had this course been pursued, no apparent conflict would exist. The marshal having arrested the prisoner and brought him before the court, it is for me to adopt a rule which suggests itself as sound, and which has been distinctly announced by the supreme court of the United States in several instances. Freeman v. Howe, 24 How. [65 U. S.] 583; Buck v. Colbroth, 3 Wall. [70 U. S.] 334. It is true these cases were not of a criminal nature, but I can see no distinction in principle. The point to be considered was, how to avoid embarrassment by a conflict of jurisdiction between the two courts. The court in substance say that the one which first has control of the subject matter shall continue to exercise jurisdiction until judgment, without molestation or interference from the other. This, it seems to me, is not only the prudent and wise course to pursue in criminal as well as civil cases, but is due to that common courtesy and comity which must exist between courts, and under a complex system like ours. I shall sustain the indictment in this case, but believing that the state exercised jurisdiction in good faith, leave the state court to deal with the offender. The federal authorities can take such steps as they may be advised of in the future.